
FILED IN OPEN COURT
NOV 19 2021
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:20-CR-178 (TSE) |
| ) | |
| CAPRICE FOSTER, ) | |
| ) | |
| a.k.a. Caprice Ladawn Foster, ) | |
| Caprice Amole-Whitley ) | |
| Caprice Amole, ) | |
| Caprice Ladawn Whitley, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The United States and the defendant, CAPRICE FOSTER, stipulate and agree that the following allegations are true and correct. The parties further stipulate that had the matter gone to trial, the United States would have proven the allegations in Count One of the Superseding Indictment and the following facts beyond a reasonable doubt with admissible and credible evidence:

**I.   Background**

1. At all times relevant to the instant offense, Defendant CAPRICE FOSTER (hereinafter, "CAPRICE") resided within the Eastern District of Virginia and was married to MARCUS FOSTER (hereinafter, "MARCUS").

2. From on or about August 8, 2017, to on or about August 5, 2019, CAPRICE was employed by Company A, a company that operated a timeshare program. CAPRICE worked in Company A's office in Washington, D.C.

3.  In or around January 2017, MARCUS incorporated Company B as a real estate consulting and transactions company with an address in Germantown, Maryland. CAPRICE and MARCUS used Company B in furtherance of the fraud scheme described below.

## II. Criminal Conduct

4.  From in or around 2018 through in or around July 2020, in the Eastern District of Virginia and elsewhere, CAPRICE, MARCUS, and others known and unknown, did knowingly and intentionally conspire and agree with each other to commit the following offenses against the United States:

   a.  wire fraud, that is, CAPRICE, MARCUS, and others knowingly and intentionally devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

   b.  bank fraud, that is, CAPRICE, MARCUS, and others knowingly and intentionally conspired with each other to execute a scheme and artifice to defraud one or more financial institutions to obtain moneys, funds, credit, and other property under the custody and control of those financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

5. It was a purpose of the scheme for CAPRICE and MARCUS to obtain moneys, funds, credit, leases, and other property by means of materially false and fraudulent pretenses, representations, and promises.

### The Manners and Means

In furtherance of the scheme to defraud, and to accomplish its unlawful objects, the following manner and means were used, among others:

6. CAPRICE and MARCUS obtained personal identifying information, such as Social Security numbers, dates of birth, driver's license numbers, and passport numbers, of real people in various ways, including by stealing mail and by using Company A's customers' personal identifiers and identification documents, which CAPRICE obtained through her employment with Company A. CAPRICE and MARCUS used the personal identifying information belonging to these individuals without these individuals' knowledge or authorization.

7. CAPRICE and MARCUS opened accounts at federally insured financial institutions in the names of real people who did not know about or authorize such account openings. In order to open and use accounts in names of other people, CAPRICE and MARCUS used the real identifiers of the named applicants including their names, dates of birth, Social Security numbers, and driver's license numbers. CAPRICE and MARCUS fabricated identification documents including fraudulent driver's licenses and social security cards in order to falsely verify their identity as the named applicants.

8. Fraudulent accounts opened by CAPRICE and MARCUS were often funded through other fraudulent activity, including by initiating funds transfers from other fraudulent accounts and lines of credit opened by CAPRICE and MARCUS, and by depositing stolen credit

card convenience checks, stolen personal checks, altered cashier's checks, and personal checks ordered through other fraudulent accounts established by CAPRICE and MARCUS.

9. CAPRICE and MARCUS often used the addresses of vacant properties as the mailing addresses for the fraudulent accounts and retrieved mail connected to the fraudulent accounts from the vacant properties' mailboxes. Such mail included check books, debit cards, and credit cards associated with the fraudulent accounts.

10. CAPRICE and MARCUS also applied for and obtained loans and opened credit card accounts and lines of credits using real people's personal identifiers such as names, dates of birth, and Social Security numbers. In support of these loan and credit applications, CAPRICE and MARCUS sometimes submitted fictitious earnings statements and other fake documents they had created purporting to verify their identity as the named applicant. At times, CAPRICE and MARCUS listed Company B as an employer in their fabricated documents, allowing CAPRICE and MARCUS to falsely verify employment and income information in an attempt to obtain approval of their loan and credit applications.

11. CAPRICE and MARCUS used fraudulently obtained loans, personal lines of credit, and credit cards to make purchases, including to purchase a Land Rover Range Rover sport utility vehicle, and to obtain funds for their personal use.

12. CAPRICE and MARCUS typically overdrew the fraudulent accounts and defaulted on the debts incurred on the fraudulently obtained credit cards, loans, and personal lines of credit.

13. CAPRICE and MARCUS also obtained leases using real people's personal identifiers such as names, dates of birth, and Social Security numbers. In support of these lease

applications, CAPRICE and MARCUS sometimes submitted fictitious earnings statements and other fake documents they had created in order to secure the leases.

14. After fraudulently obtaining leases and moving into the leased properties, CAPRICE and MARCUS failed to pay rent, sometimes incurring tens of thousands of dollars in unpaid rent before leaving or being evicted.

15. CAPRICE and MARCUS created email addresses for many of the individuals whose identities they stole and used those email addresses in furtherance of their scheme to defraud. Among other things, they used the email addresses to open fraudulent accounts online and to fraudulently apply for loans and lines of credit. They also used the email addresses to communicate directly with fraud victims while falsely representing themselves to be the individuals whose identities they stole.

16. CAPRICE and MARCUS also used several Voice over Internet Protocol phone numbers to communicate with financial institutions, landlords, and realtors in furtherance of their fraudulent scheme, often while purporting to be individuals whose identities they stole.

Acts in Furtherance of the Fraud

17. In or around June 2018, CAPRICE obtained personal identifying information for G.M. through CAPRICE's employment with Company A.

18. In or around August 2018, CAPRICE and MARCUS obtained a lease in McLean, Virginia, within the Eastern District of Virginia, using the personal identifying information of G.M., without G.M.'s knowledge or authorization. In the lease application materials, CAPRICE and MARCUS falsely stated that G.M. was employed by Company B and supervised by MARCUS. CAPRICE and MARCUS also submitted fraudulent documentation showing proof of income in order to secure the lease.

19. On or about July 8, 2018, a credit card application was submitted to USAA in G.M.'s name, using G.M.'s personal identifying information and a mailing address in Vienna, Virginia. Based on this application, USAA issued a Visa credit card ending in 3243. Between on or about July 20, 2018, and on or about August 3, 2018, CAPRICE and MARCUS spent more than $9,000 on this card. CAPRICE and MARCUS did not repay this debt.

20. G.M. did not apply for or use, or authorize anyone else to apply for or use, a USAA credit card using G.M.'s personal identifying information.

21. In or around October 2015, W.G. and L.C. purchased a home, and CAPRICE served as their real estate agent for the purchase. As their realtor, CAPRICE had access to the W.G. and L.C.'s personal identifying information. CAPRICE and MARCUS used W.G.'s personal identifying information without W.G.'s knowledge or authorization to open and use fraudulent financial accounts in W.G.'s name and to apply for and obtain a residential lease in W.G.'s name.

22. In or around November 2018, CAPRICE obtained personal identifying information for L.G. through CAPRICE's employment with Company A. CAPRICE and MARCUS used L.G.'s personal identifying information without L.G.'s knowledge or authorization to open and use fraudulent financial accounts and apply for credit in L.G.'s name.

23. In or around August 2018, CAPRICE obtained N.N.'s personal identifying information through CAPRICE's employment with Company A. CAPRICE and MARCUS used N.N.'s personal identifying information without N.N.'s knowledge or authorization to open and use fraudulent financial accounts and to apply for residential leases in N.N.'s name.

24. In or around April 2019, CAPRICE obtained personal identifying information for R.D. through CAPRICE's employment with Company A. CAPRICE and MARCUS used R.D.'s

personal identifying information without R.D.'s knowledge or authorization to open and use fraudulent financial accounts and apply for loans in R.D.'s name.

25. In the summer of 2019, CAPRICE and MARCUS obtained E.G.'s personal identifying information when E.G. sought help from CAPRICE and MARCUS to obtain a line of credit for E.G.'s business. CAPRICE and MARCUS used E.G.'s personal identifying information without E.G.'s knowledge or authorization to open and use fraudulent financial accounts in E.G.'s name and to apply for and obtain a residential lease in E.G.'s name from J.T.

26. In or around early 2020, while CAPRICE and MARCUS were living at the residence owned by J.T. and failing to pay rent to J.T., CAPRICE and MARCUS obtained J.T.'s personal identifying information and used it without J.T.'s knowledge or authorization to open financial accounts and attempt to secure new housing in J.T's name.

27. On a date unknown, but not later than February 2020, CAPRICE and MARCUS obtained the personal identifying information for D.D.T. and D.C.T. CAPRICE and MARCUS used D.D.T.'s and D.C.T.'s personal identifying information without D.D.T.'s or D.C.T.'s knowledge or authorization to open and use fraudulent financial accounts and to apply for credit cards and loans in D.D.T. and D.C.T.'s name, including obtaining a loan in the amount of $63,786 in D.D.T.'s name to purchase a Range Rover with a vehicle identification number (VIN) ending in 3889.

Execution of the Scheme

28. On or about August 22, 2018, for the purpose of executing the above-described scheme and artifice to defraud, and for the purpose for the purpose of obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, CAPRICE knowingly transmitted and caused to be transmitted by means of wire, radio, and

television communication in interstate and foreign commerce a writing, sign, signal, picture, and sound that either originated or terminated within the Eastern District of Virginia, namely the electronic transmission of a lease application for "The Kingston" in G.M.'s name.

## Losses

29. CAPRICE further agrees that as a result of the commission of the above-described fraudulent scheme, she directly and proximately caused actual losses to the following victims of at least the following amounts:

| Victim | Actual Loss |
|---|---|
| The Ascent | $17,347 |
| Blue Ocean Development | $8,000 |
| Citibank | $12,038 |
| Educational Systems FCU | $9,989 |
| J.T. | $40,200 |
| JPMorgan Chase | $57,999 |
| The Kingston | $20,683 |
| Navy Federal Credit Union | $13,727 |
| Prosperity Home Mortgage | $74,159 |
| SunTrust Bank | $74 |
| T.M. and M.M. | $16,141 |
| USAA | $9,258 |
| Wells Fargo | $4,094 |
| **TOTAL** | **$283,709** |

30. On or about August 22, 2018, in the Eastern District of Virginia and elsewhere, CAPRICE FOSTER did knowingly transfer, possess, and use the means of identification of G.M., including G.M.'s name and social security number, without lawful authority and during and in relation to a felony enumerated in 18 U.S.C. § 1028(A)(c), knowing that the means of identification belonged to another actual person.

## CONCLUSION

31. This statement of facts includes those facts necessary to support the plea agreement between CAPRICE and the United States. It does not include each and every fact known to CAPRICE or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Jessica D. Aber
United States Attorney

By: _____
Heidi B. Gesch
Carina A. Cuellar
Assistant United States Attorneys
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, CAPRICE FOSTER, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
CAPRICE FOSTER
Defendant

I am James W. Hundley, the defendant's attorney. I have carefully reviewed the above Statement of Facts with the defendant. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
James W. Hundley, Esq.
Attorney for CAPRICE FOSTER