# Exhibit 1

35

1  How are you doing now, Ms. Foster?

2  THE DEFENDANT:  I'm okay.

3  THE COURT:  I can't hear you.

4  THE DEFENDANT:  I'm feeling better.

5  THE COURT:  Good.  Use that microphone, please.  Do
6  you have water there, Ms. Foster?

7  THE DEFENDANT:  Yes, I do.

8  THE COURT:  All right.  I've told you what the
9  government must prove beyond a reasonable doubt if you persist
10 in a plea of not guilty with respect to Count 1 of the
11 indictment.

12 Do you understand that?

13 THE DEFENDANT:  Yes, Your Honor.

14 THE COURT:  And do you understand that by pleading
15 guilty you give up the right to compel the government to prove
16 all of that beyond a reasonable doubt?

17 THE DEFENDANT:  Yes, Your Honor.

18 THE COURT:  Now, Ms. Foster, did you do what's
19 charged in Count 1 of the superseding indictment, that is, did
20 you engage in a conspiracy to commit wire fraud or bank fraud?

21 THE DEFENDANT:  Yes, Your Honor.

22 THE COURT:  Using the microphone, Ms. Foster,
23 because I need to hear what you say.  Tell me in your own
24 words what you and any co-conspirators did.

25 THE DEFENDANT:  Um, well, I moved to Fairfax to have

36

1  a better life for my children when they were 9 and 16 and in
2  the process, I got really sick and ill and couldn't work and
3  my job was 100 percent commission.  So my husband wasn't
4  working and he came up with the idea to, I guess, do wire
5  fraud, bank fraud, and like other stuff.
6              THE COURT:  Can you tell me a little detail what it
7  is that you actually did?  In other words, with respect to
8  wire fraud and bank fraud, what did you do?
9              THE DEFENDANT:  I provided the names and the
10 identification information for him to be able to open up the
11 accounts.
12             THE COURT:  Bank accounts, is that right?
13             THE DEFENDANT:  Yes, Your Honor.
14             THE COURT:  I take it these are names and
15 identifiers you knew from your work as a realtor?
16             THE DEFENDANT:  Yes.
17             THE COURT:  All right.  And what was to be done with
18 this name and identification information that you gave your
19 co-conspirator.
20             THE DEFENDANT:  To open up bank accounts and he was
21 going to deposit checks in and see if they cleared for -- with
22 the money.
23             THE COURT:  And where were these checks to come
24 from?
25             THE DEFENDANT:  That part I don't know.  I don't

37

1  know the details of everything.  I just know my position.
2              THE COURT:  All right.  What else did you do, apart
3  from giving a co-conspirator names and addresses, personal
4  identifying information, for the purpose of establishing bank
5  accounts?
6              THE DEFENDANT:  I would verify information for him.
7              THE COURT:  Verify what information?
8              THE DEFENDANT:  Let's say he applied for something
9  and they need verification or whatever he applied for, let's
10 say a loan or a credit card or something, and I would verify
11 that -- where he worked at, or he's been living somewhere for
12 a certain time.
13             THE COURT:  Now, did there come a time when you
14 served as a realtor for people?
15             THE DEFENDANT:  Yes, Your Honor.
16             THE COURT:  And is that how you obtained personal
17 identifying information that you gave to your co-conspirator?
18             THE DEFENDANT:  No, it was more of the timeshare,
19 which I'm still a realtor in that process but it's the
20 timeshare information.
21             THE COURT:  All right. And did you know that he was
22 using that personal identifying information of other people to
23 establish bank accounts?
24             THE DEFENDANT:  In the beginning, Your Honor, I
25 didn't know anything.  And then after I found out I assisted.

```
                                                             38
1            THE COURT:  All right.  And after you found out you
2   say you assisted, what did you do to assist?
3            THE DEFENDANT:  I just gave him access to the names.
4            THE COURT:  And did he obtain or did he take steps
5   to have money deposited to those fake accounts?
6            THE DEFENDANT:  Yes, he tried.
7            THE COURT:  And was any of that money given to you?
8            THE DEFENDANT:  No, I never got any money.
9            THE COURT:  Well, I take it you had to pay rent and
10  buy food.
11           THE DEFENDANT:  I was working, but I just wasn't
12  working every single day.  In real estate it's a commission,
13  so whatever you did last month that's what you get paid for
14  the next month, but I got behind because I wasn't working as
15  much.
16           THE COURT:  All right.  Are you aware that your
17  co-conspirator would obtain credit cards on the basis of the
18  personal identifying information that you provided?
19           THE DEFENDANT:  Yes, Your Honor.
20           THE COURT:  And what was done with those credit
21  cards, if you know?
22           THE DEFENDANT:  I think he bought things that we
23  needed:  Food, clothing, things like that.
24           THE COURT:  All right.  Now, Ms. Foster, I'm going
25  to have Ms. Cuellar tell the Court what the government would
```

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

39

1  prove were this matter to go to trial.  Listen very carefully
2  to what Ms. Cuellar says because at the conclusion I will ask
3  you whether it's true and accurate in all respects.
4         Do you understand that?
5         THE DEFENDANT:  Yes, Your Honor.
6         THE COURT:  All right.  Ms. Cuellar, what would the
7  government prove were this matter to go to trial?
8         MS. CUELLAR:  Your Honor, if this matter had gone to
9  trial, the United States would have proven the following facts
10 beyond a reasonable doubt:
11        At all times relevant to the incident offense, the
12 defendant resided within the Eastern District of Virginia and
13 was married to Marcus Foster.  From on or about August 8,
14 2017, to on or about August 5, 2019, the defendant was
15 employed by company A, a company that operated a timeshare
16 program.  The defendant worked in company A's office in
17 Washington, D.C.
18        In or around January 2017, the defendant's husband,
19 who I'll refer to as Marcus, incorporated company B as a real
20 estate consulting and transaction company with an address in
21 Maryland.  The defendant and Marcus used company B in
22 furtherance of the fraud described.
23        From in or around 2018 through in or around July
24 2019 in the Eastern District of Virginia and elsewhere --
25        THE COURT:  I think you misread that.  Would you say