**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:20-cr-00178 |
| v. | Honorable T.S. Ellis, III |
| CAPRICE FOSTER, *Defendant* | Sentencing Date: July 14, 2022 |

**DEFENDANT'S SUPPLEMENT TO
POSITION ON SENTENCING**

Caprice Foster, by counsel, submits the following supplement to her previously filed Sentencing Memorandum and Position with Respect to Sentencing Factors. Dkt. 140.

**BACKGROUND**

Ms. Foster, through previous counsel, filed her Sentencing Memorandum and Position with Respect to Sentencing Factors on March 13, 2022. Dkt. 140. Ms. Foster objected to the application of three separate 2-level enhancements for unauthorized use of identification to unlawfully produce other means of identification (USSG § 2B1.1(b)(11)(C)), sophisticated means (USSG § 2B1.1(b)(10)(C)), and abuse of a position of private trust (USSG § 3B1.3(c)), as the three enhancements largely arise from the same use of stolen identities. Dkt. 140, p. 10. Shortly thereafter, the government submitted its Position on Sentencing which, among other things, argued that Ms. Foster should receive a 2-level enhancement for her role in the offense under U.S.S. G. § 3B1.1(c). Dkt. 144, p. 5. ("[Ms. Foster] exercised decision-making authority throughout the scheme, and she exercised control and authority over [her husband]"). In support of its position, the government cited a series of text messages and bankruptcy filings that the Fosters exchanged and/or filed over the course of the conspiracy. (Dkt. 144-1 through 144-18).

In addressing the parties' objections, the probation officer rejected the government's argument for a 2-level role enhancement under U.S.S.G. § 3B1.1(c), finding that:

> "[Ms. Foster and her husband] both engaged in the offense at hand, and it is not believed that [Ms. Foster] was the organizer, leader, manager, or supervisor to Marcus Foster. They acted together and there were no clear delineations in their responsibilities. They also shared in the fruits of the crime; one person did not receive more money than the other."

Dkt. 142, p. 35.

As discussed below, Ms. Foster agrees with the probation officer that a 2-level role enhancement is unsupported by the evidence and is therefore unwarranted in this case.

## ARGUMENT

USSG § 3B1.1(c) provides for a two-level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity ...." *Id*. Application Note 2 to this guideline makes clear that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." USSG § 3B1.1(c) (2000), comment. (n.2); see *United States v. Hodge*, 295 F. App'x 597, 603 (4th Cir. 2008).

In determining whether a defendant possessed a leadership or organizational role in a given case, the sentencing commission had indicated that a sentencing court should consider seven factors: "[1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others." *United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002) (citing U.S.S.G. § 3B1.1, cmt. n. 4). Upon even a cursory examination of the government's

evidence in both Ms. Foster's and her husband's cases, it is clear that both parties were equal and co-dependent participants—working in tandem to achieve their common goals.

Indeed, as evident from Marcus Foster's Statement of Facts, the government and Mr. Foster seemingly agreed that both Fosters were joint actors in all of the criminal activity, singling neither party out as a clear leader or manager. For example:

> ¶ 6 "*MARCUS and CAPRICE* obtained personal identifying information, such as Social Security numbers, dates of birth, driver's license numbers, and passport numbers, of real people in various ways, including by stealing mail and by using Company A's customers' personal identifiers and identification documents, which CAPRICE obtained through her employment with Company A. *MARCUS and CAPRICE* used the personal identifying information belonging to these individuals without these individuals' knowledge or authorization.
>
> ¶ 7 "*MARCUS and CAPRICE* opened accounts at federally insured financial institutions in the names of real people who did not know about or authorize such account openings. In order to open and use accounts in names of other people, *MARCUS and CAPRICE* used the real identifiers of the named applicants including their names, dates of birth, Social Security numbers, and driver's license numbers. *MARCUS and CAPRICE* fabricated identification documents including fraudulent driver's licenses and social security cards in order to falsely verify their identity as the named applicants.
>
> ¶ 8 "Fraudulent accounts opened by *MARCUS and CAPRICE* were often funded through other fraudulent activity, including by initiating funds transfers from other fraudulent accounts and lines of credit, and by depositing stolen credit card convenience checks, stolen personal checks, altered cashier's checks, and personal checks ordered through other fraudulent accounts established by *MARCUS and CAPRICE*.
>
> ¶ 10 "*MARCUS and CAPRICE* also applied for and obtained loans and opened credit card accounts and lines of credit[] using real people's personal identifiers such as names, dates of birth, and Social Security numbers. In support of these loan and credit applications, *MARCUS and CAPRICE* sometimes submitted fictitious earnings statements and other fake documents they had created purporting to verify their identity as the named applicant. At times, *MARCUS and CAPRICE* listed Company B [a company that Marcus incorporated] as an employer in their fabricated documents, allowing *MARCUS and CAPRICE* to falsely verify employment and income information in an attempt to obtain approval of their loan and credit applications.

Dkt. 125, pp. 3-4 (emphasis added) (attached as **Exhibit 1**).

Almost without exception, when describing the acts in furtherance of the conspiracy, both Mr. Foster and the government characterize the criminal conduct as being performed by both Mr. and Ms. Foster without any qualification.  See e.g. Dkt. 125 p. 5 ("MARCUS and CAPRICE obtained a lease in McLean, Virginia, [] using the personal identifying information of G.M., without G.M. 's knowledge or authorization"); *Id*. at 6 ("MARCUS and CAPRICE used L.G. 's personal identifying information without L.G. 's knowledge or authorization to open and use fraudulent financial accounts and apply for credit in L.G. 's name");  *Id*., p. 7 ("MARCUS and CAPRICE obtained the personal identifying information for D.D.T. and D.C.T. MARCUS and CAPRICE used D.D.T. 's and D.C.T.'s personal identifying information [] to apply for credit cards and loans in D.D.T. and D.C.T. 's name").  See also **Exhibit 2**, Transcript of Marcus Foster Plea Colloquy, November 23, 2021, pp. 13-22.

In addition, during the course of plea negotiations, the government provided counsel with a PowerPoint presentation highlighting key evidence from the Foster fraud conspiracy.  See **Exhibit 3**, Excerpts from Reverse Proffer Presentation.  For example, to illustrate how the stolen personal identification information was used, the government provided PowerPoint images of security camera footage and images extracted from the Fosters' digital devices that clearly showed Mr. Foster was equally involved in making fraudulent bank deposits and withdrawals, opening bank accounts and submitting fraudulent loan applications in the victims' names.



Ex. 3, p. 2.



Ex. 3, p. 3.

Moreover, in the portion of the presentation illustrating the alteration of identification cards, social security cards, and checks, the government highlighted several pieces of evidence including: a photograph that Mr. Foster took of his victim's names on a computer worksheet he was working on; a photo of Mr. Foster taking an image of a false social security card; and multiple images found on Mr. Foster's phone of other social security cards in his victims' names:



Ex. 3, pg. 7 and 9.



Ex. 3, pg. 10.

Additionally, on October 22, 3019, Mr. Foster was interviewed by Fairfax County police officers shortly after his initial arrest on state criminal charges giving rise to the instant prosecution. See **Exhibit 4**, FBI summary of Marcus Foster police interview. In that *Mirandized* interview, Mr. Foster described some of his own actions in furtherance of the conspiracy:



Ex. 4, p. 2.

Clearly, there was no discernable delineation of decision-making authority between the Fosters in either the planning or carrying out their fraudulent scheme. Nor, as the probation

officer found, is there evidence to suggest that Marcus Foster was not an equal participant, was not equally culpable, and did not play an equal role. To the contrary, during Mr. Foster's *Mirandized* interview, he exercised his authority to give consent to Fairfax County Detective ▮▮▮▮ to remove any remaining records and documents, evidence, and contraband from the ▮▮▮▮ residence. **Exhibit 5**, Affidavit for Search Warrant, p. 4. The manner in which the couple communicated in a smattering of text messages is a wholly insufficient basis upon which to conclude that Caprice Foster exercised the necessary decision-making authority over the scheme, the requisite control over her husband, or claimed a larger share of the proceeds to warrant the imposition of a 2-level enhancement for a leadership role. As such, the probation officer was correct in rejecting the government's argument for a 2-level leadership role enhancement under U.S.S. G. § 3B1.1(c).

## CONCLUSION

Based upon the foregoing, the arguments previously submitted, and medical information and arguments yet to be filed, Ms. Foster respectfully requests that this Court imposed a sentence of 24 months of imprisonment followed by 3 years of supervised release

Respectfully Submitted,

CAPRICE FOSTER,
By Counsel

_____/s/_____
Nina J. Ginsberg, VSB # 19472
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
(703) 684-4333 (T)
nginsberg@dimuro.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 30th day of June 2022, I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

                                                      _____/s/_____
                                                      Nina J. Ginsberg