# Exhibit 1

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
IN OPEN COURT
NOV 23 2021
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 1:20-CR-178 (TSE) |
| | ) |
| MARCUS AARON FOSTER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**STATEMENT OF FACTS**

The United States and the defendant, MARCUS AARON FOSTER, stipulate and agree that the following allegations are true and correct. The parties further stipulate that had the matter gone to trial, the United States would have proven the allegations in Count One of the Superseding Indictment and the following facts beyond a reasonable doubt with admissible and credible evidence:

**I.  Background**

1.  At all times relevant to the instant offense, Defendant MARCUS AARON FOSTER (hereinafter, "MARCUS") resided within the Eastern District of Virginia and was married to CAPRICE FOSTER (hereinafter, "CAPRICE").

2.  In or around January 2017, MARCUS incorporated Company B as a real estate consulting and transactions company with an address in Germantown, Maryland. Company B was used by MARCUS and CAPRICE in furtherance of the fraud scheme described below.

3. From on or about August 8, 2017, to on or about August 5, 2019, CAPRICE was employed by Company A, a company that operated a timeshare program. CAPRICE worked in Company A's office in Washington, D.C.

## II. Criminal Conduct

4. From in or around 2018 through in or around July 2020, in the Eastern District of Virginia and elsewhere, MARCUS, CAPRICE, and others known and unknown, did knowingly and intentionally conspire and agree with each other to the following offenses against the United States:

    a. wire fraud, that is, MARCUS, CAPRICE, and others knowingly and intentionally devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

    b. bank fraud, that is, MARCUS, CAPRICE, and others knowingly and intentionally conspired with each other to execute a scheme and artifice to defraud one or more financial institutions to obtain moneys, funds, credit, and other property under the custody and control of those financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

Case 4:22-cr-00018-JSE Document 125 Filed 06/28/22 Page 2 of 10 PageID# 6384

5. It was a purpose of the conspiracy for MARCUS and CAPRICE to obtain moneys, funds, credit, leases, and other property by means of materially false and fraudulent pretenses, representations, and promises.

## The Manners and Means

In furtherance of the scheme to defraud, and to accomplish its unlawful objects, the following manner and means were used, among others:

6. MARCUS and CAPRICE obtained personal identifying information, such as Social Security numbers, dates of birth, driver's license numbers, and passport numbers, of real people in various ways, including by stealing mail and by using Company A's customers' personal identifiers and identification documents, which CAPRICE obtained through her employment with Company A. MARCUS and CAPRICE used the personal identifying information belonging to these individuals without these individuals' knowledge or authorization.

7. MARCUS and CAPRICE opened accounts at federally insured financial institutions in the names of real people who did not know about or authorize such account openings. In order to open and use accounts in names of other people, MARCUS and CAPRICE used the real identifiers of the named applicants including their names, dates of birth, Social Security numbers, and driver's license numbers. MARCUS and CAPRICE fabricated identification documents including fraudulent driver's licenses and social security cards in order to falsely verify their identity as the named applicants.

8. Fraudulent accounts opened by MARCUS and CAPRICE were often funded through other fraudulent activity, including by initiating funds transfers from other fraudulent accounts and lines of credit, and by depositing stolen credit card convenience checks, stolen

3

personal checks, altered cashier's checks, and personal checks ordered through other fraudulent accounts established by MARCUS and CAPRICE.

9. MARCUS and CAPRICE often used the addresses of vacant properties as the mailing addresses for the fraudulent accounts and retrieved mail connected to the fraudulent accounts from the vacant properties' mailboxes. Such mail included check books, debit cards, and credit cards associated with the fraudulent accounts.

10. MARCUS and CAPRICE also applied for and obtained loans and opened credit card accounts and lines of credits using real people's personal identifiers such as names, dates of birth, and Social Security numbers. In support of these loan and credit applications, MARCUS and CAPRICE sometimes submitted fictitious earnings statements and other fake documents they had created purporting to verify their identity as the named applicant. At times, MARCUS and CAPRICE listed Company B as an employer in their fabricated documents, allowing MARCUS and CAPRICE to falsely verify employment and income information in an attempt to obtain approval of their loan and credit applications.

11. MARCUS and CAPRICE used fraudulently obtained loans, personal lines of credit, and credit cards to make purchases, including to purchase a Cadillac Escalade and a Land Rover Range Rover sport utility vehicle, and to obtain funds for their personal use.

12. MARCUS and CAPRICE typically overdrew the fraudulent accounts and defaulted on the debts incurred on the fraudulently obtained credit cards, loans, and personal lines of credit.

13. MARCUS and CAPRICE also obtained leases using real people's personal identifiers such as names, dates of birth, and Social Security numbers. In support of these lease

4

applications, MARCUS and CAPRICE sometimes submitted fictitious earnings statements and other fake documents they had created in order to secure the leases.

14.   After fraudulently obtaining leases and moving into the leased properties, MARCUS and CAPRICE failed to pay rent, sometimes incurring tens of thousands of dollars in unpaid rent before leaving or being evicted.

15.   MARCUS and CAPRICE created email addresses for many of the individuals whose identities they stole and used those email addresses in furtherance of their scheme to defraud.  Among other things, they used the email addresses to open fraudulent accounts online and to fraudulently apply for loans and lines of credit.  They also used the email addresses to communicate directly with fraud victims while falsely representing themselves to be the individuals whose identities they stole.

16.   MARCUS and CAPRICE also used several Voice over Internet Protocol phone numbers to communicate with financial institutions, landlords, and realtors in furtherance of their fraudulent scheme, often while purporting to be individuals whose identities they stole.

Acts in Furtherance of the Fraud

17.   In or around June 2018, CAPRICE obtained personal identifying information for G.M. through CAPRICE's employment with Company A.

18.   In or around August 2018, MARCUS and CAPRICE obtained a lease in McLean, Virginia, within the Eastern District of Virginia, using the personal identifying information of G.M., without G.M.'s knowledge or authorization.  In the lease application materials, MARCUS and CAPRICE falsely stated that G.M. was employed by Company B and supervised by MARCUS.  MARCUS and CAPRICE also submitted fraudulent documentation showing proof of income in order to secure the lease.

19. On or about July 8, 2018, a credit card application was submitted to USAA in G.M.'s name, using G.M.'s personal identifying information and a mailing address in Vienna, Virginia. Based on this application, USAA issued a Visa credit card ending in 3243. Between on or about July 20, 2018, and on or about August 3, 2018, MARCUS and CAPRICE spent more than $9,000 on this card. CAPRICE and MARCUS did not repay this debt.

20. G.M. did not apply for or use, or authorize anyone else to apply for or use, a USAA credit card using G.M.'s personal identifying information.

21. In or around October 2015, W.G. and L.C. purchased a home, and CAPRICE served as their real estate agent for the purchase. As their realtor, CAPRICE had access to the W.G. and L.C.'s personal identifying information. MARCUS and CAPRICE used W.G.'s personal identifying information without W.G.'s knowledge or authorization to open and use fraudulent financial accounts in W.G.'s name and to apply for and obtain a residential lease in W.G.'s name.

22. In or around November 2018, CAPRICE obtained personal identifying information for L.G. through CAPRICE's employment with Company A. MARCUS and CAPRICE used L.G.'s personal identifying information without L.G.'s knowledge or authorization to open and use fraudulent financial accounts and apply for credit in L.G.'s name.

23. In or around August 2018, CAPRICE obtained N.N.'s personal identifying information through CAPRICE's employment with Company A. MARCUS and CAPRICE used N.N.'s personal identifying information without N.N.'s knowledge or authorization to open and use fraudulent financial accounts and to apply for residential leases in N.N.'s name.

24. In or around April 2019, CAPRICE obtained personal identifying information for R.D. through CAPRICE's employment with Company A. MARCUS and CAPRICE used R.D.'s

personal identifying information without R.D.'s knowledge or authorization to open and use fraudulent financial accounts and apply for loans in R.D.'s name.

25. In the summer of 2019, MARCUS and CAPRICE obtained E.G.'s personal identifying information when E.G. sought help from MARCUS and CAPRICE to obtain a line of credit for E.G.'s business. MARCUS and CAPRICE used E.G.'s personal identifying information without E.G.'s knowledge or authorization to open and use fraudulent financial accounts in E.G.'s name and to apply for and obtain a residential lease in E.G.'s name from J.T.

26. In or around early 2020, while MARCUS and CAPRICE were living at the residence owned by J.T. and failing to pay rent to J.T., MARCUS and CAPRICE obtained J.T.'s personal identifying information and used it without J.T.'s knowledge or authorization to open financial accounts and attempt to secure new housing in J.T's name.

27. On a date unknown, but not later than February 2020, MARCUS and CAPRICE obtained the personal identifying information for D.D.T. and D.C.T. MARCUS and CAPRICE used D.D.T.'s and D.C.T.'s personal identifying information without D.D.T.'s or D.C.T.'s knowledge or authorization to open and use fraudulent financial accounts and to apply for credit cards and loans in D.D.T. and D.C.T.'s name, including obtaining a loan in the amount of $63,786 in D.D.T.'s name to purchase a Range Rover with a vehicle identification number (VIN) ending in 3889.

Execution of the Scheme

28. On or about May 25, 2020, in the Eastern District of Virginia, for the purpose of executing the above-described scheme and artifice to defraud, and for the purpose for the purpose of obtaining money and funds under the control of federally insured financial institutions by means of materially false and fraudulent pretenses, representations, and promises,

MARCUS knowingly and unlawfully executed the aforesaid scheme and artifice to defraud financial institutions by providing a check from a SunTrust bank account ending in 7121 in the name of J.T. to a realtor in an attempt to secure a lease and access to a residential property.

29. MARCUS further agrees that as a result of the commission of the above-described fraudulent scheme, he directly and proximately caused actual losses to the following victims of at least the following amounts:

| Victim | Actual Loss |
| --- | --- |
| The Ascent | $17,347 |
| Ally Bank | $42,441 |
| Blue Ocean Development | $8,000 |
| Citibank | $12,038 |
| Educational Systems FCU | $9,989 |
| J.T. | $40,200 |
| JPMorgan Chase | $57,999 |
| The Kingston | $20,683 |
| Navy Federal Credit Union | $13,727 |
| Prince George's Community Credit Union | $22,658 |
| Prosperity Home Mortgage | $74,159 |
| SunTrust Bank | $74 |
| T.M. and M.M. | $16,141 |
| USAA | $9,258 |
| Wells Fargo | $4,094 |
| TOTAL | $348,808 |

30. On or about April 15, 2020, in the Eastern District of Virginia and elsewhere, MARCUS FOSTER did knowingly transfer, possess, and use the means of identification of J.T., including J.T.'s name and social security number, without lawful authority and during and in relation to a felony enumerated in 18 U.S.C. § 1028(A)(c), knowing that the means of identification belonged to another actual person.

## CONCLUSION

31. This statement of facts includes those facts necessary to support the plea agreement between MARCUS and the United States. It does not include each and every fact known to MARCUS or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Jessica D. Aber
United States Attorney

By: _____
Heidi B. Gesch
Carina A. Cuellar
Assistant United States Attorneys
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981

9

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, MARCUS AARON FOSTER, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
MARCUS AARON FOSTER
Defendant

I am Joseph R. Conte, the defendant's attorney. I have carefully reviewed the above Statement of Facts with the defendant. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Joseph R. Conte
Attorney for MARCUS AARON FOSTER