# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**UNITED STATES OF AMERICA**          :
                                      :
              **Plaintiff,**          :   Criminal Action
                                      :   No. 20-cr-00178-TSE
              **v.**                  :
                                      :
**MARCUS FOSTER,**                    :   November 23, 2021
                                      :   11:00 a.m.
                                      :
                                      :
              **Defendant.**          :
                                      :
.............................. :

**TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS**
**BEFORE THE HONORABLE LIAM O'GRADY,**
**UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

  For the United States:          **Heidi B. Gesch, Assistant U.S.**
                                  **Attorney**
                                  UNITED STATES ATTORNEY'S OFFICE
                                  (Alexandria)
                                  2100 Jamieson Avenue
                                  Alexandria, VA 22314
                                  703-299-3700
                                  Email: Heidi.gesch@usdoj.gov

                                  **Carina Cuellar, Assistant U.S.**
                                  **Attorney**
                                  UNITED STATES ATTORNEY'S OFFICE
                                  (Alexandria)
                                  2100 Jamieson Avenue
                                  Alexandria, VA 22314
                                  703-299-3700
                                  Email: Carina.cuellar@usdoj.gov

```
APPEARANCES:  (Cont.)

For the Defendant:          Joseph Roll Conte, Esq.
                            LAW OFFICE OF J.R. CONTE, PLLC
                            400 7th Street, NW
                            Suite 206
                            Washington, DC 20004
                            202-638-4100
                            Fax: 202-628-0249
                            Email: Dcgunlaw@gmail.com


Court Reporter:             Scott L. Wallace, RDR, RMR, CRR
                            Official Court Reporter
                            United States District Court
                            401 Courthouse Square
                            Alexandria, VA 22314-5798
                            Office: 703.549.4626
                            Cell: 202.277.3739
                            Email: Scottwallace.edva@gmail.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

1        **MORNING SESSION, NOVEMBER 23, 2021**

2    (11:04 a.m.)

3        THE COURTROOM CLERK:  The Court calls *United States of*

4    *America versus Marcus Foster*, Case Number 1:20-cr-178.  May I

5    have appearances, please, first for the government.

6        MS. GESCH:  Good morning, Your Honor.  Heidi Gesch and

7    Carina Cuellar for the United States.

8        THE COURT:  Good morning.

9        MS. CUELLAR:  Good morning, Your Honor.

10       MR. CONTE:  Good morning, Your Honor.  May it please the

11   Court, Joseph Conte on behalf of Mr. Foster.

12       THE COURT:  All right.  Good morning, Mr. Conte.  Good

13   morning, Mr. Foster.

14       THE DEFENDANT:  Good morning.

15       THE COURT:  All right.  Are we ready to proceed?

16       MR. CONTE:  Yes, Your Honor.

17       THE COURT:  All right.  Then let's have Mr. Foster come to

18   the podium and be sworn.

19        (MARCUS FOSTER, DEFENDANT IN THE CASE, SWORN)

20       THE COURT:  Good morning, Mr. Foster.  My name is Liam

21   O'Grady, and I'm one of the other district judges here in the

22   building.  I'm taking your plea today on behalf of Judge Ellis,

23   and Judge Ellis will be the sentencing judge in the case.  I just

24   wanted to let you know why there's a different judge up here

25   today.

 1          How old are you, sir?

 2          THE DEFENDANT:  32.

 3          THE COURT:  All right.  How far did you go in school?

 4          THE DEFENDANT:  Some college.

 5          THE COURT:  So you read and write the English language

 6   without difficulty?

 7          THE DEFENDANT:  Yes.

 8          THE COURT:  All right.  And have you gone over the plea

 9   agreement and the Statement of Facts and the superseding

10   indictment yourself, sir?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And also gone over it with Mr. Conte?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And has he answered any questions you had

15   about the information in each of those documents?

16          THE DEFENDANT:  Yes, he has.

17          THE COURT:  Do you need anymore time to speak with him

18   this morning before we proceed?

19          THE DEFENDANT:  No, I don't.

20          THE COURT:  All right.  Has anybody made any threats or

21   promises to get you to plead guilty to Count 1 that aren't in the

22   plea agreement?

23          THE DEFENDANT:  No.

24          THE COURT:  And are you satisfied with Mr. Conte's

25   services on your behalf?

```
1          THE DEFENDANT:  Yes, I am.

2          THE COURT:  All right.  Are you under -- I know that

3   you're incarcerated.  Are you taking any medication which would

4   make it difficult for you to understand the questions I'm asking

5   you here today?

6          THE DEFENDANT:  No, I'm not.

7          THE COURT:  Okay.  Let's look at Count 1.  Do you

8   understand that in Count 1 that you're charged with, between 2018

9   through July of 2020, in the Eastern District of Virginia and

10  elsewhere, with conspiring with your wife, Caprice Foster, to

11  commit crimes against the United States, including wire fraud;

12  that is, you and Caprice and others, known and unknown, to the

13  Grand Jury knowingly and intentionally devised and intended to

14  devise a scheme, an artifice to defraud and to obtain money and

15  property by means of materially false and fraudulent pretenses,

16  representations and causes, and transmitted or caused to be

17  transmitted by means of Interstate Commerce writings, signs,

18  signals, pictures, and sounds for the purpose of executing such

19  scheme and artifice in violation of Title 18, Section 1343, which

20  is the wire fraud section, and also bank fraud; that you and

21  Caprice knowingly and intentionally conspired with each other to

22  execute a scheme and artifice to defraud one or more financial

23  institutions, including, but not limited to Chime, the Bankcorp

24  Bank, Stride Bank, JP Morgan, Chase, SunTrust, CitiBank, Alliant,

25  Ally Bank, Wells Fargo, First National Bank, Apple Federal Credit
```

1    Union, Axos Bank, USAA, Navy Federal Credit Union, and

2    Educational Systems Federal Credit Union to obtain moneys, funds,

3    credit, and other property under the custody and control of those

4    financial institutions by means of materially false and

5    fraudulent pretenses, representations, and promises in violation

6    of Title 18, United States Code Section 1344, and those crimes

7    are in violation of Title 18, Section 1349, the conspiracy

8    section.  Do you understand that's what you're charged with in

9    Count 1?

10            THE DEFENDANT:  Yes.

11            THE COURT:  All right.  And did you go over the elements

12   of that offense that the government must prove beyond a

13   reasonable doubt with Mr. Conte about those offenses?

14            THE DEFENDANT:  Yes.

15            THE COURT:  All right.  Before I can accept your plea, I

16   need to make sure that you understand your rights here in court.

17   Do you understand you have a right to plead not guilty and

18   require the government to prove its case against you beyond a

19   reasonable doubt?

20            THE DEFENDANT:  Yes, I do.

21            THE COURT:  Do you understand you're entitled to a jury

22   trial, if you wish it, where 12 members of the community would

23   hear evidence, and only if they unanimously found you guilty

24   would you be convicted of this charge?  Do you understand that?

25            THE DEFENDANT:  Yes, I do.

1          THE COURT:  Do you understand that if there was a trial,

2     the government would be required to put witnesses on the stand;

3     they'd be under oath; they'd be subject to cross-examination by

4     Mr. Conte.  You'd have a right to contest the evidence that the

5     government sought to admit against you.  You'd have a right to

6     testify in a trial if you wished.  You have an absolute right not

7     to testify if you did not wish to because you have an absolute

8     right to remain silent, and no inference of your guilt could be

9     made because you didn't testify.

10         You have a right to use the power of the Court to compel

11    witnesses to attend and testify on your behalf, and you have a

12    right to counsel at every stage of the proceedings against you.

13    Do you understand those rights?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  And you discussed with Mr. Conte your right to

16    plead not guilty and go to trial and decided to waive that right

17    and plead guilty instead here today?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you understand that the maximum penalty for

20    Count 1, the conspiracy to commit wire and bank fraud in

21    violation of Title 18, Section 1349, is a maximum term of 20

22    years of imprisonment, a fine of the greater of $250,000 or twice

23    the gross gain or loss, full restitution, forfeiture of assets, a

24    hundred dollar special assessment, and three years of supervised

25    release?

1         THE DEFENDANT:  Yes, I do.

2         THE COURT:  All right.  Do you understand that supervised

3    release is a period of probation which begins after you have

4    served any term of incarceration?  If you're found to be in

5    violation of the conditions of that supervised release, you could

6    be ordered back to the penitentiary for its full length.  Do you

7    understand that?

8         THE DEFENDANT:  Yes, I do.

9         THE COURT:  Okay.  Do you understand that I'm not going

10   to -- or Judge Ellis will sentence you in approximately three

11   months, and before that we're going to order a presentence report

12   which will tell him much more than he knows about you today.

13   That report will also include a sentencing guideline calculation.

14   Do you understand that?

15        THE DEFENDANT:  Yes, I do.

16        THE COURT:  And did you go over the sentencing guidelines

17   as they may apply to your case with Mr. Conte?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Do you understand that in your agreement the

20   United States and you have stipulated and recommended that

21   certain provisions of the sentencing guidelines apply, including

22   the base offense being a 7, that the loss is at least $50,000 but

23   less than $1.5 million, resulting in a 14-level enhancement of

24   the guidelines, that you -- that the conduct related to the

25   conspiracy to commit wire fraud, bank fraud, and fraud related to

1    loan leases, mortgage fraud, bankruptcy fraud, mail theft and

2    identity theft, and overt acts in furtherance thereof constitute

3    relevant conduct under Section 1B1.3, and that you should receive

4    acceptance of responsibility points for your decision to enter

5    your plea of guilty.  Do you understand those are the

6    recommendations that the parties are making to Judge Ellis?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Do you understand that Judge Ellis isn't bound

9    by those recommendations?  And the way the guidelines will be

10   calculated is the probation officer will first look at the

11   conduct and determine what he or she believes is the proper

12   guideline range that will be communicated to the government and

13   your counsel, who will then have an opportunity to agree or

14   disagree and file a pleading with Judge Ellis telling him that,

15   and then Judge Ellis will ultimately determine the proper

16   guideline range to apply to your case and then consider at

17   sentencing -- he'll do that on your date of sentencing.  Do you

18   understand that?

19           THE DEFENDANT:  Yes, I do.

20           THE COURT:  Do you understand that you agreed in your plea

21   agreement in paragraph 5 to waive your right to appeal your

22   conviction as well as any sentence that is imposed, as long as

23   it's a lawful sentence?

24           THE DEFENDANT:  Yes.

25           THE COURT:  All right.  And that does not include your

1    right to direct appeal for ineffective assistance of counsel, and

2    there may be other matters that are appealable, but generally it

3    acts as a waiver of your right to appeal your conviction and a

4    lawful sentence.  Do you understand that?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  All right.  Do you understand that in return

7    for your plea to Count 1, the government will not further

8    criminally prosecute you in the Eastern District of Virginia for

9    the specific conduct described in the superseding indictment or

10   in the Statement of Facts, that this does not confer any immunity

11   from any state government prosecution?  Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Ms. Gesch, are you aware of any other

14   impending investigations concerning Mr. Foster?

15         MS. GESCH:  Your Honor, I believe there is a pending state

16   case related to the same conduct in Fairfax County.  Based on my

17   discussions with them, I expect that that is likely to be

18   dismissed following a resolution of this case, but I can't

19   promise that, but that's my understanding.

20         THE COURT:  All right.  So you still have a pending state

21   matter that may go away, but, in any event, you're not afforded

22   any immunity in your agreement for that state charge.  Do you

23   understand that?

24         (Discussion had off the record between attorney and

25   client.)

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  And again, in return for your plea to

3    Count 1, the government will move to dismiss the remaining counts

4    pending in the indictment at your sentencing hearing.  Do you

5    understand that?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Do you understand that you agreed to make

8    restitution for the full amount of the victims' losses, and you

9    agree that Prosperity Home Mortgage is a victim, is entitled to

10   restitution in an amount not less than $74,159, and, without

11   limiting the amount of restitution that the Court must impose,

12   the parties agree that at a minimum the following victims have

13   suffered losses identified below and are entitled to restitution.

14   On page 7 of your plea agreement, do you see the victims and

15   actual losses which total $348,808?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And do you agree that the -- that those

18   entities are entitled to restitution?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And you understand that forfeiture and

21   restitution are separate and distinct financial obligations --

22         THE DEFENDANT:  -- Yes --

23         THE COURT:  -- upon you?  Okay.  Do you understand that if

24   you -- in your agreement you've agreed to forfeit all interest to

25   any fraud-related asset which you own or exercise control, and in

1    this case the property subject to forfeiture includes, but is not

2    limited to, a money judgment in the amount of not less than

3    $276,065, a sum for which you will be jointly and severally

4    liable with your spouse?  Do you understand that?

5         THE DEFENDANT:  Yes, I do.

6         THE COURT:  Do you understand that if the proceeds of the

7    offense are not available to the United States to be forfeited,

8    that the Court must enter that forfeiture money judgment, and

9    that will include a personal money judgment in the amount of

10   $276,065?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Okay.  And you understand that you've agreed

13   to waive your constitutional and statutory challenges to the

14   forfeiture amount?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Do you understand that, if you attempt to

17   withdraw your agreement to plead guilty, that you may not be

18   permitted to, but also, if you do that, the United States will be

19   released from its obligation under this agreement and that you

20   may be subject to prosecution for perjury or obstruction of

21   justice?

22        THE DEFENDANT:  Yes.

23        THE COURT:  All right.  Did you go over the Statement of

24   Facts carefully?

25        THE DEFENDANT:  Yes, I did.

```
1          THE COURT:  All right.  And do you agree that if the case
2     had gone to trial, the government would have proven the facts
3     identified in this Statement of Facts beyond a reasonable doubt
4     with admissible and credible evidence?
5          THE DEFENDANT:  Yes.
6          THE COURT:  All right.  So let's go over the Statement of
7     Facts.  You agree that you and your wife resided in the Eastern
8     District of Virginia during the course of the conspiracy, and
9     that in or around January of 2017 you incorporated Company B as a
10    real estate consulting and transactions company with an address
11    in Germantown, Maryland?  Is that correct?
12         THE DEFENDANT:  Yes.
13         THE COURT:  And that Company B was used by you and Caprice
14    in furtherance of the fraud scheme?
15         THE DEFENDANT:  Yes.
16         THE COURT:  And that is it correct that from on or about
17    August 8th of 2017 to on or about 5th of 2019, Caprice was
18    employed by Company A, a company that operated a timeshare
19    program, and that Caprice worked in Company A's offices in
20    Washington, D.C.?  Is that correct?
21         THE DEFENDANT:  Yes.
22         THE COURT:  And is it correct that between 2018 and July
23    of 2020 in the Eastern District of Virginia and elsewhere, that
24    you conspired and agreed with each other to commit wire fraud and
25    bank fraud as I previously read to you in the Count 1 of the
```

1    indictment?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  And the purpose of the conspiracy

4    was so that you and Caprice could obtain money, funds, credit,

5    leases, and other property by means of materially false and

6    fraudulent pretenses, representations and promises; is that

7    correct?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Is it correct that the manner of

10   accomplishing your unlawful conspiracy included that you and

11   Caprice obtained personal identifying information such as social

12   security cards, numbers, dates of birth, driver's license

13   numbers, and passport numbers of real people in various ways,

14   including by stealing mail and by using Company A's customer

15   personal identifiers and identification documents, which Caprice

16   obtained through her employment with Company A, and that you two

17   used the personal identifying information belonging to these

18   individuals without those individuals' knowledge or

19   authorization?  Is that correct?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And that you and Caprice then opened accounts

22   at federally insured financial institutions in the names of real

23   people who did not know about or authorize such account openings,

24   and that in order to open and use accounts in the names of other

25   people, you two used the real identifiers and named applicants,

1   including their names, dates of birth, social security numbers

2   and driver's license numbers; is that correct?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And that you both fabricated identification

5   documents, including drivers' licenses and social security cards

6   in order to identify identities as named applicants; is that

7   correct?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Is it correct that the accounts opened by you

10  and Caprice were funded through other --

11         THE DEFENDANT:  Court's indulgence.

12         THE COURT:  Yes.

13         (Discussion had off the record between attorney and

14  client.)

15         MR. CONTE:  Thank you, Your Honor.

16         THE COURT:  Is it correct that the accounts that you and

17  Caprice opened were often funded through other fraudulent

18  activity, including by initiating fund transfers from other

19  fraudulent accounts and lines of credit by depositing stolen

20  credit card convenience checks, stolen personal checks, altered

21  cashier checks, and personal checks ordered through other

22  fraudulent accounts established by you two?  Is that correct?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Is it correct that you and Caprice often used

25  the addresses of vacant properties as mail addresses for the

1    fraudulent accounts and retrieved mail connected to those

2    fraudulent accounts from the vacant properties' mailboxes?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Is it correct that you and Caprice applied for

5    and obtained loans and opened credit cards and lines of credit

6    using real people's personal identifiers such as names, dates of

7    birth, social security numbers, and in support of these loans and

8    credit applications you and Caprice sometimes submitted

9    fictitious earning statements and other fake documents that had

10   created -- that you had created purporting to identify their

11   identity as the named defendant?  Is that correct?

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.  And that at times you and Caprice

14   listed Company B as an employer in their fabricated documents

15   allowing you two to falsely verify employment and income

16   information in an attempt to obtain approval of their loan and

17   credit applications; is that correct?

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.  Is it correct that you and Caprice

20   used fraudulently obtained loans, personal lines of credit,

21   credit cards to make purchases, including the purchase of a

22   Cadillac Escalade and a Land Range Rover vehicle, to obtain --

23   and to obtain funds for your personal use?  Is that correct?

24         THE DEFENDANT:  Uh, yes.

25         THE COURT:  Okay.  Is it correct that you and Caprice

1    typically overdrew the fraudulent accounts and defaulted on the

2    debts occurred on those credit cards, loans, and personal lines

3    of credit?

4            THE DEFENDANT:  Yes.

5            THE COURT:  All right.  And that you also obtained leases

6    using real people's personal identifiers, and in support of those

7    lease applications you sometimes submitted fictitious earnings

8    statements and other fake documents in order to secure those

9    leases?

10           THE DEFENDANT:  Yes.

11           THE COURT:  And that after fraudulently obtaining leases

12   and moving into those leased properties, that you and Caprice

13   failed to pay rent sometimes incurring tens of thousands of

14   dollars in rent before leaving or being evicted, correct?

15           THE DEFENDANT:  Yeah.

16           THE COURT:  Is it correct that you and Caprice also

17   created e-mail addresses for many of the individuals whose

18   identities you had stolen and used those e-mail addresses in

19   furtherance of this scheme?  Is that correct?

20           THE DEFENDANT:  Yes.

21           THE COURT:  All right.  And is it correct that you and

22   Caprice also used several voiceover Internet protocol phone

23   numbers to communicate with financial institutions and landlords

24   and realtors in furtherance of this fraudulent scheme?

25           THE DEFENDANT: Yes.

```
1         THE COURT:  Is it correct that in or about June of 2018

2    Caprice obtained personal identifying information for GM through

3    her employment with Company A?

4         THE DEFENDANT:  Uh, yes.

5         THE COURT:  All right.  And that in or about August of

6    2018, you and Caprice obtained a lease in McLean, Virginia within

7    the Eastern District of Virginia using the personal identifying

8    information of GM without GM's knowledge or authorization, and in

9    the lease application materials you and Caprice falsely stated

10   that GM was employed by Company B and supervised by you, and that

11   you submitted fraudulent documentation showing proof of income in

12   order to secure that lease?

13        THE DEFENDANT:  Uh, yeah.

14        THE COURT:  And is it correct that on or about July 8th,

15   2018, a credit card application was submitted to USAA in GM's

16   name using GM's personal identifying information and mailing

17   address in Vienna Virginia?

18        THE DEFENDANT:  Yes.

19        THE COURT:  And that based on that application USAA issued

20   a Visa credit card which, between July 20th of 2018 and August

21   3rd of 2018 you and Caprice used to spend more than $9,000 on

22   that card, which was not repaid?

23        THE DEFENDANT:  Yes.

24        THE COURT:  And that GM did not apply for or use or

25   authorize anyone else to use a USAA credit card using GM's
```

1    personal identifying information?

2         THE DEFENDANT:  Yes.

3         THE COURT:  Is it correct that on or about October of

4    2015, WG and LC purchased a home, and Caprice served as their

5    real estate agent for that purchase, and in doing so Caprice had

6    access to their personal identifying information which,

7    thereafter, you and Caprice used without their knowledge or

8    authorization to open and use fraudulent financial accounts and

9    WG's name and to apply for and obtain a residential lease in WG's

10   name?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Is it correct that in or about November of

13   2018 Caprice obtained personal identifying information for LG

14   through her employment with Company A, and that you and Caprice

15   used LG's personal identifying information without their

16   knowledge or authorization to open and use fraudulent financial

17   accounts and apply for credit in LG's name?

18        THE DEFENDANT:  Yes.

19        THE COURT:  And is it correct that in or about August of

20   2018 Caprice obtained NN's personal identifying information

21   through her employment with Company A, and that you and Caprice

22   used NN's personal identifying information without their

23   knowledge or authorization to open and use fraudulent financial

24   accounts and apply for residential leases?

25        THE DEFENDANT:  Yes.

```
 1            THE COURT:  Again, in April of 2019, is it correct that
 2    Caprice used information that she got through her employment with
 3    Company A to obtain personal identifying information for RD, and
 4    that then you and Caprice used RD's personal identifying
 5    information without their knowledge or authorization to open and
 6    use financial -- fraudulent financial accounts and apply for
 7    loans in RD's flame?
 8            THE DEFENDANT:  Yes.
 9            THE COURT:  Okay.  Is it correct that in the summer of
10    2019 you and Caprice obtained EG's personal identifying
11    information when EG sought help from you to obtain a line of
12    credit for EG's business, and that thereafter you used EG's
13    personal identifying information without his -- without their
14    knowledge or authorization to open and again used fraudulent
15    financial accounts in EG's name and to apply for and obtain a
16    residential lease in EG's name from JT?  Is that correct?
17            THE DEFENDANT:  Yes.
18            THE COURT:  All right.  Is it correct that in or around
19    early 2020 while you and Caprice were living at a residence owned
20    by JT and failing to pay rent to JT, you obtained JT's personal
21    identifying information and used it without JT's knowledge or
22    authorization to open financial accounts and attempted to secure
23    new housing in JT's name?
24            THE DEFENDANT:  Yes.
25            THE COURT:  All right.  And is it correct that on a date
```

1  no later than February of 2020 you and Caprice obtained personal

2  identifying information for DDT and DCT and that you used that

3  information without their knowledge or authorization to open and

4  use fraudulent financial accounts and apply for credit cards and

5  loans in their names, including obtaining a loan in the amount of

6  $63,786 in DDT's name to purchase a Range Rover?  Is that

7  correct?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Is it correct that on or about May 25th of

10  2020 in the Eastern District of Virginia, for purposes of

11  executing this scheme to defraud, that you executed a scheme and

12  artifice to defraud the SunTrust Bank account ending in 7121 in

13  the name of JT; that you provided a check from SunTrust Bank in

14  the name of JT to a realtor in an attempt to secure a lease and

15  access to a residential property?

16        THE DEFENDANT:  Yes.

17        THE COURT:  All right.  You agree that, as a result of the

18  commission of the above described fraudulent scheme, you directly

19  and proximately caused actual losses to the victims who are

20  identified in paragraph 29 of the Statement of Facts, which

21  identifies the different banks totalling $348,808?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Is it correct that on or about April 15th of

24  2020 in the Eastern District of Virginia, that you knowingly

25  transferred, possessed and used the means of identification of

1   JT's including JT's name and social security number, without

2   authority and during and in relation to a felony enumerated in

3   Title 18, Section 1028(a)(C), knowing that the means of

4   identification belonged to another actual person?

5        THE DEFENDANT:  Yes.

6        THE COURT:  And that you did each of these acts knowingly

7   and willfully and not by any accident or mistake?

8        THE DEFENDANT:  Yes.

9        THE COURT:  All right.  How do you then plead, Mr. Foster,

10  to Count 1, which we've identified as conspiracy to commit wire

11  fraud and bank fraud with Caprice in violation of Title 18,

12  Sections 1343 and 44 and 1349, guilty or not guilty?

13       THE DEFENDANT:  Guilty.

14       THE COURT:  Mr. Conte, have you gone over the facts of the

15  case with Mr. Foster?

16       MR. CONTE:  Yes, Your Honor.

17       THE COURT:  And have you gotten discovery from the

18  government?

19       MR. CONTE:  Yes, Your Honor.

20       THE COURT:  And do you believe that Mr. Foster's plea is

21  knowingly and voluntarily made today?

22       THE DEFENDANT:  I do, Your Honor.

23       THE COURT:  And that there's a basis in fact for it?

24       THE DEFENDANT:  Yes, Your Honor.

25       THE COURT:  All right.  Thank you.  Based on the plea

```
 1    agreement and the Statement of Facts and Mr. Foster's answers to

 2    my questions and those of counsel, I'll find him guilty of Count

 3    1.  I'll order a presentence report.  I'll continue sentencing

 4    until March 18th at 10 a.m. on Judge Ellis's calendar.  Is that

 5    an available date for you, Mr. Conte?

 6         MR. CONTE:  I believe so, Your Honor.

 7         THE COURT:  All right.  Ms. Gesch, I think that's the date

 8    of the co-defendant's sentencing as well, so we'll set it at

 9    10 a.m. for Judge Ellis.

10         All right.  Anything else?  As I said, I'm going to order

11    a presentence report, and the -- Mr. Foster, the presentence

12    report will be an important document for Judge Ellis.  It will

13    tell him much more than he knows about you today.

14         If you have any questions about what you're being asked to

15    do or, you know, obtain, anything that you have questions about

16    that the probation officer is asking of you, you make sure you

17    speak to Mr. Conte right away, all right, sir?

18         THE DEFENDANT:  I will.

19         THE COURT:  Okay.  All right.  All right.  Anything else

20    in this matter, then?

21         MS. GESCH:  Nothing from the government.

22         MR. CONTE:  Nothing on behalf of Mr. Foster, Your Honor.

23         THE COURT:  All right.  Mr. Conte, on a separate note, I

24    understand that you received some additional discovery in the

25    other case; is that correct?  Have you had a chance to get that?
```

1          MR. CONTE:  Yes, Your Honor.  I have it right here.

2          THE COURT:  Okay.

3          MR. CONTE:  I don't think it's going to impact that

4    November 30th hearing, but I'll let the Court know as soon as

5    possible if it does.

6          THE COURT:  Just so when you have an opportunity to look

7    at it, please let us know.

8          MR. CONTE:  Thank you.

9          THE COURT:  All right.  All right.  Thank you, counsel.

10   Good day, Mr. Foster.  All right.  We're in recess.

11          (Proceedings adjourned at 11:43 a.m.)

12                     **C E R T I F I C A T E**

13

14                     I, Scott L. Wallace, RDR-CRR, certify that
          the foregoing is a correct transcript from the record of
15        proceedings in the above-entitled matter.

16

          /s/ Scott L. Wallace               4/4/22
17

          ----------------------------      ----------------
18        **Scott L. Wallace, RDR, CRR              Date**
             **Official Court Reporter**
19

20

21

22

23

24

25